UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TONYE-D'MITRIA VICKERS-PEARSON,<br><br>                              Plaintiff,<br><br>                  -v.-<br><br>CITY OF NEW YORK, and CORRECTION OFFICER FRANKLIN BROWN,<br><br>                              Defendants. | 18 Civ. 8610 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Tonye-D'Mitria Vickers-Pearson, proceeding *pro se*, brings a federal civil rights claim under 42 U.S.C. § 1983 against the City of New York (the "City") and Correction Officer Franklin Brown (together with the City, "Defendants"), stemming from a physical altercation between and among Vickers-Pearson, then a pre-trial detainee, and two fellow inmates at the Vernon C. Bain Correctional Center ("VCBC") on Rikers Island on June 19, 2017.  Plaintiff alleges that Brown failed to intervene in a timely manner to break up a fight and protect Plaintiff from harm, thereby violating Plaintiff's due process rights under the Fourteenth Amendment.  He also names the City as a defendant, but does not state a discernible theory of municipal liability. Presently before the Court is Defendants' motion for summary judgment as to all of Plaintiff's claims.  For the reasons that follow, the Court concludes that Plaintiff has failed to establish a genuine dispute of material fact as to his claims against Officer Brown and the City.  Accordingly, Defendants' motion for summary judgment is granted in full.

**BACKGROUND**[1]

## A.    Factual Background

On June 19, 2017, Plaintiff was a pre-trial detainee at VCBC on Rikers

Island.  (Def. 56.1 ¶ 1).  While incarcerated at VCBC, Plaintiff was housed in

the general population, not in a segregated housing unit or protective custody.

(*Id.* at ¶ 2).

At approximately 10:21 a.m. on June 19, 2017, Plaintiff was being moved

from VCBC's clinic to his housing area along with 15 other inmates.  (Def. 56.1

¶¶ 6-7; Def. Reply Decl., Ex. K).  Correction Officer Castil, who is not named as

a defendant in this action, was at the front of the line, and Defendant Brown

was at the back of the line.  (*Id.* at ¶¶ 10-11).  Plaintiff was carrying a bag that

he just received from a social worker containing a pair of socks, a pair of

thermal tops, thermal bottoms, a pair of T-shirts, and two pairs of undershorts.

(*Id.* at ¶ 5).  Also among the 16 inmates being escorted were D. DeMory and H.

Soukouna, two general-population inmates whom Plaintiff had never

encountered prior to June 19, 2017.  (*Id.* at ¶¶ 7, 12).

---

[1]    The facts stated herein are drawn from Defendants' Statement of Material Facts
Pursuant to Local Civil Rule 56.1 ("Def. 56.1" (Dkt. #60)); Plaintiff's Statement of
Material Facts Pursuant to Local Civil Rule 56.1 ("Pl. 56.1" (Dkt. #68)); Defendants'
Response to Plaintiff's Statement of Material Facts Pursuant to Local Civil Rule 56.1
("Def. Resp. 56.1" (Dkt. #80)); the exhibits attached to the Declaration of Stephanie De
Angelis in Support of Defendants' Motion for Summary Judgment ("Def. Decl., Ex. [ ]"
(Dkt. #59)); the exhibits attached to the Declaration of Tonye-D'Mitria Vickers-Pearson
in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl.
Decl., Ex. [ ]" (Dkt. #68)); the exhibits attached to the reply Declaration of Stephanie De
Angelis in Support of Defendants' Motion for Summary Judgment ("Def. Reply Decl.,
Ex. [ ]" (Dkt. #79)); the transcript of the deposition of Tonye-D'Mitria Vickers-Pearson
("Pl. Dep." (Def. Decl., Ex. B)); and the transcript of the deposition of Franklin Brown
("Brown Dep." (Def. Decl., Ex. C)).  Citations to the parties' Rule 56.1 statements
incorporate by reference the documents and deposition testimony cited therein.  See
Local Rule 56.1(d).

While the inmates were being moved, Soukouna asked Plaintiff, "...You Crip?" to which Plaintiff replied, "No, I'm not Crip." (Def. 56.1 ¶ 14). The following exchange between Soukouna and Plaintiff ensued:

> Soukouna:  "...Oh, you are gay Crip. Give me the bag."
>
> Plaintiff:  "No."
>
> Soukouna:  "Give me the bag, you don't need that. You know I got homies over there. I'm going to get whatever I want, give me the bag."

(*Id.* at ¶ 15). Soukouna reached for Plaintiff's bag and Plaintiff said "no." (*Id.* at ¶ 16). Plaintiff, Soukouna, DeMory, and an unknown inmate then began a verbal argument. (*Id.* at ¶ 19).

Correction Officer Castil told Plaintiff to come to the front of the line, and Soukouna and DeMory followed him. (Pl. Dep. 59:24-60:2; Def. 56.1 ¶ 21). Castil, who was at the head of the movement, put his arms out to separate Plaintiff from Soukouna and DeMory. (Def. 56.1 ¶ 22; Def. Decl., Ex. E). As DeMory continued to move toward Plaintiff, Plaintiff lunged at DeMory with raised fists. (Pl. Decl., Ex. 3; Def. 56.1 ¶ 23; Def. Decl., Ex. H). In response, DeMory raised his left arm to block Plaintiff. (Def. Decl., Ex. G). Plaintiff struck DeMory's face with his left hand and punched the left side of DeMory's head and back with his right fist. (Def. 56.1 ¶¶ 25-26). Plaintiff and DeMory became embroiled in a physical fight, which Soukouna then joined. (*Id.* at ¶¶ 27-28). Officer Castil unsuccessfully attempted to stop the fight. (*Id.* at ¶¶ 29-30; Pl. Dep. 60:25-61:1).

Before the fight started, Officer Brown was at the back of the line of inmates that he and Castil were escorting.  (Def. 56.1 ¶¶ 9-10).  In the moments leading up to the fight, Brown was waiting for three inmates to leave the barber shop area and pass through the metal detector so they could catch up with the rest of the escorted group.  (*Id.* at ¶ 32; Def. Reply Decl., Ex. K).  He was unable to see Plaintiff, DeMory, and Soukouna from this location.  (Def. 56.1 ¶ 17; Pl. Dep. 58:10-11).  When Brown heard a commotion coming from the front of the escorted line, he quickly moved to the scene.  (Def. 56.1 ¶ 33).  He arrived approximately three seconds after the fight began; he initially gave verbal commands to "break up the fight" and "stop fighting" (*id.* at ¶¶ 34, 37), and very soon thereafter physically intervened in the matter (*id.* at ¶ 36).

As Officer Brown tried to separate Plaintiff from the other inmates, Plaintiff continued to swing at DeMory and Soukouna over Brown's left arm. (Def. 56.1 ¶ 38; Def. Reply Decl., Ex. J).  Brown restrained Plaintiff at the far wall and held him there until the fight ended.  (Def. 56.1 ¶ 40; Def. Reply Decl., Ex. J).  Additional officers responded and deployed a chemical agent, dispersing the inmates involved in the incident.  (Pl. Dep. 65:4-6; Brown Dep. 5).  Shortly thereafter, Plaintiff was taken to Lincoln Hospital for medical attention after suffering a seizure.  (Def. 56.1 ¶ 42; Pl. Decl., Ex. 4).

## B.   Procedural History

Plaintiff filed the original Complaint in this action on September 19, 2018, naming as Defendants the City of New York and the New York City Department of Corrections (the "DOC").  (*See generally* Dkt. #2 (Complaint)).

By Order dated October 19, 2018, the Court dismissed the claims against the DOC in accordance with New York law, which requires substitution of the City for its agencies. (Dkt. #6). The Court also ordered the New York City Law Department to identify Officer Brown and provide his address for service of process pursuant to *Valentin* v. *Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997), and directed Plaintiff to file an Amended Complaint naming Officer Brown as a Defendant. (*Id.*). On November 26, 2018, the City identified Correction Officer Franklin Brown as the "Officer Brown" named in Plaintiff's Complaint (Dkt. #9), and the Court ordered that Brown be added as a Defendant the following day (Dkt. #10). The City and Brown waived service on December 5, 2018. (Dkt. #11, 12).

On December 13, 2018, pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiff filed an Amended Complaint asserting claims under 42 U.S.C. § 1983, alleging that Officer Brown had violated his constitutional rights by failing to protect him from assault by the two other inmates during the June 19, 2017 fight. (*See generally* Dkt. #14 ("Amended Complaint")). Plaintiff alleged that, as a result of the incident, he suffered extensive physical injuries and psychological trauma and now must take anti-seizure and anti-anxiety medications to cope with the symptoms. (*Id.*). Defendants filed their Answer to the Amended Complaint on February 4, 2019. (Dkt. #17).

On January 31, 2020, Defendants filed their motion for summary judgment and supporting papers. (Dkt. #56, 58-62). The Court received Plaintiff's declaration in opposition to Defendants' motion for summary

5

judgment on April 30, 2020.  (Dkt. #68).  After several delays due to the

COVID-19 pandemic, this motion became fully briefed on August 25, 2020,

when Defendants filed their reply papers in further support of their motion for

summary judgment.  (Dkt. #78-81).

## DISCUSSION

**A.     Standard of Review**

### 1.     Motions for Summary Judgment Under Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56(a), a "court shall grant

summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322

(1986).[2]  A fact is "material" if it "might affect the outcome of the suit under the

governing law," and it is genuinely in dispute "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson* v.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys* v. *City of New

York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A court "must resolve

all ambiguities and draw all reasonable inferences in the non-movant's favor."

---

[2]     The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary
judgment standard from a genuine "issue" of material fact to a genuine "dispute" of
material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting
that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue'
becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment
determination.").  This Court uses the post-amendment standard but continues to be
guided by pre-amendment Supreme Court and Second Circuit precedent that refer to
"genuine issues of material fact."

*Vt. Teddy Bear Co., Inc.* v. *1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P.* v. *PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (internal quotation marks and alteration omitted).  If the movant has met its burden to show that no genuine factual dispute exists, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" and, toward that end, "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations and quotation marks omitted).  The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

In deciding a motion for summary judgment, "a district court generally should not weigh evidence or assess the credibility of witnesses." *Rojas* v. *Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  However, "reliable objective evidence," such as a video recording, "may speak for itself" and negate facts proffered by the parties. *Marcavage* v. *City of New York*, 689 F.3d 98, 110 (2d Cir. 2012); *see also Scott* v. *Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by [video evidence], so that no

reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

### 2.    Motions for Summary Judgment in *Pro Se* Cases

In *pro se* cases, the court must liberally construe the *pro se* party's pleadings "'to raise the strongest arguments that they suggest.'"  *McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

This task has been complicated by Plaintiff's imperfect compliance with Local Rule 56.1.  Under that rule, a movant is required to identify admissible evidence in support of each factual assertion in his or her Rule 56.1 statement. *See* S.D.N.Y. Local Civil Rule 56.1(d) ("Each statement by the movant … pursuant to Rule 56.1(a) … must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").  Conversely, a nonmovant seeking to controvert these factual assertions must also cite to admissible evidence, and where properly supported facts in a Local Rule 56.1 statement are denied with only conclusory assertions, the court will find such facts to be true.  *See id.*; *id.* at 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

Plaintiff's Rule 56.1 statement includes numerous assertions that are unsupported by cited materials and therefore are deemed conclusory and

insufficient to create a genuine dispute of material fact. *See Wali* v. *One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) ("[T]he Court may not rely solely on the statement of undisputed facts contained in [a] party's Rule 56.1 statement; it also must be satisfied that the … party's assertions are supported by the record." (citing *Vt. Teddy Bear*, 373 F.3d at 244)). "*Pro se* litigants are … not excused from meeting the requirements of Local Rule 56.1." *Id.* (citing *Vt. Teddy Bear*, 373 F.3d at 246). Nevertheless, even where there is incomplete compliance with the Local Rules, a court retains discretion "to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Id.* To be fair to all parties, the Court will rely principally on its own thorough review of the record.

**B.     Analysis**

The Court interprets Plaintiff's pleadings to raise the single claim that Officer Brown violated his rights under the Due Process Clause of the Fourteenth Amendment by failing to protect him from physical harm at the hands of other inmates at VCBC. The Court concludes that Brown is entitled to summary judgment on that claim because Plaintiff has failed to create a material dispute of fact as to the lawfulness of Brown's conduct. To the extent that Plaintiff's naming of the City as a Defendant might suggest he intended also to raise a municipal liability claim, the Court concludes that the City is entitled to summary judgment because Plaintiff cannot establish either an

underlying constitutional violation or any municipal policy or custom that resulted in a constitutional deprivation.

### 1.    Plaintiff Has Not Established a Cognizable Failure-to-Protect Claim

In general, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer* v. *Brennan*, 511 U.S. 825, 833 (1994) (quotation marks and internal alteration omitted).  A failure-to-protect claim may rise to the level of a constitutional violation when a prison official displays "deliberate indifference to a substantial risk of serious harm" to an inmate.  *Id.* at 836.  To establish unconstitutional deliberate indifference in the context of a failure-to-protect claim, a pretrial detainee must satisfy both prongs of a two-pronged test.  *First*, the plaintiff must satisfy an "'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process."  *Darnell* v. *Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  *Second*, he must satisfy a "'*mens rea* prong' … showing that the officer acted with at least deliberate indifference to the challenged conditions."  *Id.*

To meet the requirements of the objective prong, "the inmate must show that the conditions [of incarceration] … pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness."  *Darnell*, 849 F.3d at 30 (internal quotation marks and citations omitted).  The plaintiff must further demonstrate that the unreasonable risk was "actual or imminent."  *Benjamin* v. *Fraser*, 343 F.3d 35,

10

51 (2d Cir. 2003), *overruled on other grounds by Caiozzo* v. *Koreman*, 581 F.3d 63 (2d Cir. 2009).  In the objective analysis, substantial risk of serious harm "depends not on the officials' perception of the risk of harm, but solely on whether the facts, or at least those genuinely in dispute on a motion for summary judgment, show that the risk of serious harm was substantial." *Lewis* v. *Siwicki*, 944 F.3d 427, 431-32 (2d Cir. 2019).[3]  Relevant factors include "the nature of the prison population with whom [the plaintiff] was incarcerated," and whether there was specific information ahead of time suggesting that the plaintiff's safety was in jeopardy.  *Id.* at 432.

Here, Plaintiff was housed in the general population of VCBC, as were DeMory and Soukouna, yet Plaintiff had never met either DeMory or Soukouna before June 17, 2017.  (Def. 56.1 ¶ 12).  There is likewise no evidence in the record that prior to the incident, DeMory, Soukouna, or anyone else detained at VCBC made threats against Plaintiff.  Therefore, any risk of harm would have had to arise out of the circumstances preceding the fight.  Plaintiff testified that Soukouna demanded that Plaintiff give him the bag of clothing that Plaintiff had received shortly before the fight, stating: "You know I got homies over there," and "I'm going to get whatever I want, give me the bag"; and that Soukouna then reached for the bag.  (Pl. Dep. 54:12-16).  Plaintiff refused. Plaintiff walked to the front of the line and Officer Castil attempted to separate

---

[3]     The objective prong of a deliberate indifference claim is analyzed in the same manner whether the plaintiff is a pretrial detainee bringing a claim under the Fourteenth Amendment Due Process Clause or a convicted prisoner bringing a claim under the Eighth Amendment.  *See Darnell* v. *Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (reciting standard to establish an objective deprivation under "both the Eighth and Fourteenth Amendments").

him from Soukouna, DeMory, and a third unnamed inmate.  (Def. 56.1 ¶¶ 21-22).  Soukouna and DeMory moved towards Plaintiff, flanking Officer Castil on both sides.  (*Id.* at ¶ 22; Pl. Decl., Ex. 3).

Plaintiff asserts in his summary judgment briefing, for the first time, that when he moved to the front of the line, he told Officer Castil that "he feared for his safety because the other inmates were 'Bloods.'"  (Pl. 56.1 ¶ 21).  If the Court credits this statement despite Plaintiff's failure to so testify during his deposition, it lends some support to Plaintiff's assertion that Plaintiff was a target given Soukouna's identification of Plaintiff as a "Crip."  (*See* Pl. Dep. 54:11-12).  Officer Castil's attempt to separate the inmates also indicates that he perceived a likelihood that the verbal exchange could escalate into a physical confrontation.  (*See* Pl. Decl., Ex. 3).

Construing Plaintiff's allegations liberally, they suggest the possibility of an imminent risk of harm to Plaintiff from Soukouna, DeMory, and the unnamed inmate.  Video evidence and Plaintiff's own deposition indisputably establish that Plaintiff initiated the physical altercation by lunging at DeMory, but that does not negate the possibility that the other inmates imminently would have used physical force against Plaintiff.

However, even if Plaintiff could succeed in establishing the first prong, he fails on the second.  For his Fourteenth Amendment deliberate indifference claim to be viable, Plaintiff must show that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial

12

detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.  In other words, the *mens rea* element is defined objectively.  *Id.*

Plaintiff cannot prevail because he provides no evidence that Officer Brown knew or should have known about the risk of harm to Plaintiff, let alone acted either intentionally or recklessly in failing to mitigate that risk.  As discussed above, there were no prior indications that Soukouna, DeMory, or any other inmate in the escorted line posed a threat to Plaintiff.  To the contrary, this was precisely the sort of surprise altercation that undermines a deliberate indifference claim.  *See, e.g.*, *Fernandez* v. *N.Y.C. Dep't of Corr.*, No. 08 Civ. 4294 (KMW), 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010) (finding that plaintiff failed to state a claim for deliberate indifference where he did not plead that "he and [another inmate] were involved in a prior altercation, that [the other inmate] had previously threatened him, or that there was any other reason for officers at DOC to be on notice that there was a risk of altercation between Plaintiff and [the other inmate]"); *Zimmerman* v. *Macomber*, No. 95 Civ. 882 (DAB), 2001 WL 946383, at * 5 (S.D.N.Y. Aug. 21, 2001) ("Courts routinely deny deliberate indifference claims based upon surprise attacks."); *Coronado* v. *Goord*, No. 99 Civ. 1674 (RWS), 2000 WL 1372834, at *5 (S.D.N.Y. Sept. 25, 2000) (dismissing complaint where officers were unaware of earlier attacks on inmate at a prior prison).

In the moments before the fight began, Officer Brown was at the back of the line, acting as the trailer officer and waiting for three inmates who lagged

13

behind the rest of the group.  (Def. 56.1 ¶¶ 9-10, 32; Def. Reply Decl., Ex. K).
He was out of sight of Plaintiff, Soukouna, and DeMory.  (Pl. Dep. 54:16-21,
58:10-11).  Plaintiff cites to the Use of Force Report Brown filed following the
incident, in which Brown says he observed the "verbal commotion between
several inmates" and gave orders to the inmates to remain silent and in line, to
attempt to create a dispute of fact about Brown's awareness of the risk before
the physical fight started.  (Pl. 56.1 ¶ 20).  But this statement is clarified by
Brown's deposition testimony (*see* Brown Dep. 4), Plaintiff's own deposition
testimony (*see* Pl. Dep. 54:16-21, 58:10-11), and the clear video evidence (*see*
Def. Reply Decl., Ex. K).  The video recording in particular is the sort of
"reliable objective evidence" that "speak[s] for itself" and prevails over
contradictory facts offered by the parties.  *Marcavage,* 689 F.3d at 110.

Furthermore, the evidence demonstrates that Officer Brown was not
indifferent to the risk of harm to Plaintiff, once he became aware of it.  When
Brown recognized that a fight had broken out at the front of the line, he
responded quickly.  (Def. 56.1 ¶ 33).  He arrived moments after the fight began
and verbally ordered the inmates to stop fighting.  (*Id.* at ¶¶ 34, 37).  When
verbal commands did not work, Brown promptly attempted to physically
separate Plaintiff and Soukouna, positioning himself between them as they
tried to strike each other around Brown.  (*Id.* at ¶ 36; Def. Reply Decl., Ex. J).
Brown then pushed and held Plaintiff against the far wall until other officers
deployed a chemical agent to break up the fight.  (Brown Dep. 5).

14

On this evidence, no reasonable jury could conclude that Officer Brown either intentionally or recklessly failed to act with reasonable care to prevent a known substantial harm to Plaintiff. *Cf. Velez* v. *City of New York*, No. 17 Civ. 9871 (GHW), 2019 WL 3495642, at *4 (S.D.N.Y. Aug. 1, 2019) (granting summary judgment to defendant officer where he was not present until after a fight had already begun and had no "realistic opportunity to intervene and prevent the harm"); *Vincent* v. *Sitnewski*, 117 F. Supp. 3d 329, 337 (S.D.N.Y. June 25, 2015) (granting summary judgment to defendant officers where plaintiff failed to show that they had actual or constructive knowledge of a threat to plaintiff from other inmates or that they failed to discharge their responsibilities once they arrived to the scene of a fight); *Dublin* v. *New York City Law Dep't*, No. 10 Civ. 2971 (LAP), 2012 WL 4471306, at *5-7 (S.D.N.Y. Sept. 26, 2012) (granting summary judgment to defendants where plaintiff had no prior interaction with his attackers, a verbal exchange preceding a fight did not include any threats, and there was no evidence defendant officer knew that plaintiff faced a threat from his attackers). Thus, Defendant Brown is entitled to summary judgment on Plaintiff's failure-to-protect claim.

### 2.   Defendant Brown Is Entitled to Qualified Immunity

Summary judgment is also proper independent of Plaintiff's failure to establish a failure-to-protect claim because Officer Brown is entitled to qualified immunity. "[O]fficers are entitled to qualified immunity under § 1983 unless [i] they violated a federal statutory or constitutional right, and [ii] the unlawfulness of their conduct was 'clearly established at the time.'" *District of*

*Columbia* v. *Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle* v. *Howards*, 566 U.S. 658, 664 (2012)).  "Clearly established" means that the law is "sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Id.* (internal quotation marks omitted).  Unless "existing law … placed the constitutionality of the officer's conduct beyond debate," the officer is entitled to qualified immunity.  *Id.* (internal quotation marks omitted).

In the context of this case, "it is clearly established that inmates have the right to be free from harm inflicted by fellow prisoners and that corrections officers have an obligation to protect inmates from a known and substantial risk of serious harm." *Dublin*, 2012 WL 4471306, at *7.  But for the same reasons that Plaintiff's claim against Officer Brown fails on the merits — *i.e.*, Brown did not know of a substantial risk of serious harm to Plaintiff and neither intentionally or recklessly disregarded any such risk — the claim does not survive qualified immunity analysis.  Even if Brown's conduct were unlawful (and to reiterate, the Court concludes otherwise), the "only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the [defendant's] conduct under the circumstances." *Lennon* v. *Miller*, 66 F.3d 416, 420 (2d Cir. 1995).  The evidence is clear that Brown responded quickly to the escalating situation and physically intervened to prevent further harm to Plaintiff.  This response to an unpredictable altercation was at least arguably reasonable. *Cf. Velez*, 2019 WL 3495642, at *5; *Dublin*, 2012 WL 4471306, at *7.

Accordingly, summary judgment in favor of Officer Brown is appropriate on qualified immunity grounds as well.

### 3.     Plaintiff Has Not Raised a Municipal Liability Claim

Courts must interpret *pro se* parties' pleadings to make the strongest arguments suggested.  *See McPherson*, 174 F.3d at 280.  In determining the claims a *pro se* party has raised, "the court's imagination should be limited only by [Plaintiff's] factual allegations, not by the legal claims set out in his pleadings."  *Phillips* v. *Girdich*, 408 F.3d 124, 130 (2d Cir. 2005).  Thus, if the facts and evidence Plaintiff has presented could support a municipal liability claim, the Court will interpret his pleadings to have raised such a claim, especially in light of his naming the City as a Defendant.  But Plaintiff falls short of meeting this bar.

In order to state a claim for municipal liability under *Monell* v. *Department of Social Services*, 436 U.S. 658 (1978), a plaintiff must allege that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by [the City's] officers."  *Id.* at 690.  The City "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the [City's] official decisionmaking channels."  *Id.* at 690-91.

Variations on *Monell* claims include failure-to-train and failure-to-supervise claims, under which the City may be liable for the unconstitutional conduct of its employees if the failure to train or supervise them adequately

17

amounts to "deliberate indifference" to the rights of those with whom the city employees interact.  *City of Canton* v. *Harris*, 489 U.S. 378, 388 (1989); *Wray* v. *City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (citing *City of Canton*, 489 U.S. at 388).  To establish deliberate indifference, a plaintiff must show that: "(i) a policymaker knows to a moral certainty that city employees will confront a particular situation; (ii) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation; and (iii) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."  *Wray*, 490 F.3d at 195-96 (internal quotation marks omitted).  To prevail on a failure-to-train claim, a plaintiff must "identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation."  *Amnesty Am.* v. *Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (quoting *City of Canton*, 489 U.S. at 391).

Plaintiff's allegations and the evidence he presents focus solely on Officer Brown's conduct in the moment.  Plaintiff does not allege in his Amended Complaint that Brown acted in accordance with a policy or custom that caused an infringement of Plaintiff's constitutional rights, or that Brown was improperly hired, trained, or retained, nor does Plaintiff present any evidence that suggests that Brown's alleged failure to protect was the result of an agency policy or custom.  Brown's choices about how best to conduct and supervise the inmate movement during which the fight occurred may well have been

guided by institutional protocols and training, but this is just the speculation of the Court.  Plaintiff does not make the case, even on a generous interpretation of the facts presented and the reasonable inferences to be drawn therefrom.

In any event, there can be no municipal liability without an underlying constitutional violation.  *See City of Los Angeles* v. *Heller*, 475 U.S. 796, 799 (1986) ("[The City agencies] were sued only because they were thought legally responsible for [the officer's] actions; if the latter inflicted no constitutional injury on respondent, it is inconceivable that petitioners could be liable to respondent."); *see also Curley* v. *Village of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001) ("[W]e have recognized that a municipality cannot be liable for inadequate training or supervision when the officers involved in [an incident] did not violate the plaintiff's constitutional rights.").  As discussed above, Plaintiff has failed to establish a material dispute of fact as to whether Officer Brown was deliberately indifferent to a substantial risk of serious harm to Plaintiff.  Thus, there is no constitutional deprivation from which a *Monell* liability claim could stem even if it were properly alleged.

## CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment is GRANTED.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

The Clerk of Court is further directed to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated:      September 24, 2020
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

20